WILLIAM S. MEEKS, complainant-appellant,

*v.*

MARY M. BICKFORD, defendant-respondent.

[Decided May 19th, 1924.]

1. Where one executes a quit-claim deed to lands in which the grantor had no interest, such deed conveys nothing to the grantee, and is a nullity.

2. A court of equity will give to a quit-claim deed the effect of a deed of bargain and sale only when the intention of the releasor, coupled with an interest in the property, for which a valuable consideration has been paid, is established by proof.

3. Where one who has conveyed property afterwards executes a quit-claim deed therefor to a third person, the grantor cannot be presumed to have had an intention to convey the same premises to two different persons, as such conduct would be fraudulent, and fraud is never presumed, but must be proved.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bentley, dismissing complainant's bill of complaint.

*Messrs. Wall, Haight, Carey & Hartpence,* for the appellant.

*Mr. Pierre F. Cook,* for the respondent.

The opinion of the court was delivered by

KALISCH, J.

The complainant filed his bill, under the statute, in the court below, to quiet the title to certain uncultivated and wild lands in the borough of Norwood, in the county of Bergen. The case discloses that these lands had been conveyed to him by three separate deeds of bargain and sale, in May and September, 1914, by Juliet C. Smith, a resident of Kansas, for a valuable consideration, and that he neglected to put them on record in the Bergen county clerk's office until the 19th day of April, 1918. During that interval, on October 11th, 1916, the complainant's grantor, Juliet C. Smith, executed a quit-claim deed in the State of Kansas for the same lands, theretofore conveyed by her to the complainant, to the defendant, Mary M. Bickford. Her acknowledgment of the deed was taken before a notary public of that state.

The validity of the quit-claim deed is first attacked upon the ground that there was no proper proof that a notary public was authorized to take an acknowledgment of a deed in the State of Kansas, hence the acknowledgment was a nullity, and its subsequent recording by the defendant's brother in Bergen county could not operate to give it any legal effect. We think there was proof that the notary who

took the acknowledgment was authorized by the laws of Kansas to take the same, contained in the certificate of the county clerk of the district of Shawnee county, appended to the acknowledgment and which certified that the notary was duly commissioned and sworn and duly authorized to take the acknowledgment. This was a substantial compliance with the twenty-third section of the act entitled "An act respecting conveyances," *Supp. 1911, 1915, Comp. Stat. pp. 408, 409,* and we agree with the views expressed by the vice-chancellor in that regard.

We need not stop to consider the question mooted whether or not the defendant took her deed with notice or knowledge of the complainant's prior conveyance by reason of the fact that the complainant had posted on the land after he had purchased it, a notice containing the words: "No trespass." Since we have reached the conclusion that the decree in this case must be reversed for a more fundamental reason. It must be conceded that at the time Juliet Smith executed the quit-claim she had no interest whatever in the lands mentioned in the deed. The language of the deed is, "Has remised, released and forever quit-claimed, to the said party of the second part and to her heirs and assigns all those tracts or parcels of land," &c. The deed contains no covenants of any kind whatsoever. The release is made subject to all liens of every nature, and unpaid taxes; and the *habendum* clause, in the following language: "To have and to hold the above-mentioned and described premises with the appurtenances, unto the party of the second part, her heirs and assigns forever." This language in the deed, under the facts of this case and the law applicable thereto, did not operate to transform the character of the quit-claim deed into one of bargain and sale. The fact that at the time Juliet Smith executed the quit-claim deed she had no interest whatsoever in the lands quit-claimed cannot be successfully controverted in face of the three conveyances made by her to the complainant for the same lands, at least two years prior to her executing the quit-claim deed to the defendant. The vice-chancellor held in substance that the three conveyances

made to the complainant were void, as to the defendant, under the fifty-fourth section of the act entitled "An act respecting conveyances" (*2 Comp. Stat. p. 1553*), which provides, in substance, that every deed, &c., shall until duly recorded be void and of no effect against all subsequent *bona fide* purchasers for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded, provided that such deed shall be valid and operative, although not recorded, except as against such subsequent purchasers, because the complainant's deeds were not recorded until more than a year and a half after the quit-claim deed was executed and recorded.

In order to bring the defendant's quit-claim deed within the operation of the provision of the statute it was essential that it should appear that Juliet Smith had some interest in the lands which she could lawfully convey or release to the defendant.

Under the facts, as they appeared in the court below, Mrs. Smith had no interest, either present or contingent, in the property, and, therefore, could not lawfully convey any.

An examination of the cases dealing with the topic under discussion will show that a court of equity will interfere and give the effect of a bargain and sale deed to one of quit-claim where it appears that the releasor had an interest in the land and intended to convey such interest to the releasee. This interest may be a contingent one. But there must be an interest which the releasor may lawfully convey and it must also appear that a valuable consideration was paid therefor.

The case of *Havens* v. *Seashore Land Co.*, *47 N. J. Eq. 365*, relied on in respondent's brief as supporting the contention that the quit-claim deed operated as a bargain and sale deed, does not do so in fact. What Vice-Chancellor Van Fleet held in that case was that a deed of quit-claim was sufficient to pass all the estate that the grantor could lawfully convey by bargain and sale deed. And this learned jurist, at page 371, said: "When the granting clause of a deed is silent as to the estate intended to be conveyed, resort

may be had to the *habendum* to ascertain the intention of the grantor in that regard. It cannot be used either to enlarge or diminish the estate specifically defined in the granting clause, for if it is repugnant to that clause it is void, but if that clause is either silent or ambiguous, then the *habendum* becomes the standard by which the estate granted must be measured." He cites with approval, at page 372, the language of Judge Harr, who said: "Any instrument which shows that a title was meant to be given in return for value received [will be] equally effectual with the most formal deed."

In many states quit-claim deeds are dealt with by statute similar to the one of the State of Massachusetts, whose statute provides that such a deed shall be sufficient to pass all the estate which the grantor could lawfully convey by deed of bargain and sale. *3 Washb. Real Prop. 311.*

Exceeding care, therefore, must be taken, before accepting decisions of sister states on the subject in question to ascertain whether or not such decisions are founded upon some statutory regulation. In New Jersey we have no statute relating to the matter. We are, therefore, to be controlled by what has been so forcefully and wisely expressed by Vice-Chancellor Van Fleet in the *Havens Case,* above cited, by the intention of the grantor to be ascertained from the instrument itself or from the circumstances surrounding the transaction. For it is only with the aid of a court of equity, in a course to accomplish a just and equitable result, that the intention of the releasor, coupled with an interest in the property, for which a valuable consideration has been paid, that that court will give to a quit-claim the effect of a deed of bargain and sale.

With the undisputable facts that Juliet Smith had conveyed all her right, title and interest to and in the property to the complainant; and that when she made and executed the quit-claim deed to defendant for the same premises she had no more interest in the same than an utter stranger, it is incomprehensible how it can be said, in the absence of any proof, with any show of reason that it was her intention

to convey to the defendant property which she had previously conveyed to the plaintiff. For if it was the intention of Juliet Smith to convey the same premises to the defendant which she had previously conveyed to the plaintiff, she was guilty of fraudulent conduct. The court will not presume fraud. Fraud must be proven. The making of the release is consistent with the notion that a representation might have been made to Mrs. Smith that she had an interest in the property which she had not disposed of, and hence the making of a quit-claim deed would be quite natural. As she had no interest she could not lawfully convey any. The quit-claim deed was a nullity.

There being no testimony or circumstances from which the court below could reasonably have inferred that it was the intention of the releasor of the quit-claim to convey the premises already conveyed to the complainant, to the defendant, the defense to the complainant's suit for relief failed.

Moreover, it is quite significant that neither of the two brothers, who testified on the behalf of their sister, made the slightest suggestion that he did not have knowledge of the complainant's rights before the quit-claim deed was made to their sister; and what is more significant is the fact that the defendant did not take the witness-stand to testify as to the *bona fides* of the transaction.

The views herein expressed tend to the conclusion that no interest in the lands in question passed by the quit-claim deed to the defendant, and that the defendant does not come within the provisions of the fifty-fourth section of the act respecting conveyances, *supra*, as a *bona fide* purchaser for value of said lands.

Counsel for respondent, in his brief, says, that the question of the validity of the quit-claim as a defense was abandoned by the counsel of complainant in the court below. The record does not show this. It does appear, in the opinion of the vice-chancellor, that he held that the giving of the quit-claim deed to defendant gave the defendant a better title than the plaintiff had, for the reason the plaintiff had failed to record his deed until after the deed of quit-claim was

recorded. The vice-chancellor could not have decided that the defendant had the better title unless he passed upon the question of the *bona fides* of the transaction, and there is nothing in the opinion which declares that the appellant abandoned any of the questions raised.

The decree is reversed, with costs, to the end that the complainant may be decreed to have a perfect title to the lands in question and that the defendant has no title or interest therein.

*For affirmance*—LLOYD—1.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, WHITE, GARDNER, VAN BUSKIRK, CLARK, MCGLENNON, KAYS—14.